**Harry BRANDT, Plaintiff–Appellant,**

v.

**VULCAN, INC., Defendant–Appellee.**

No. 93–2761.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1994.

Decided July 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 18, 1994.

responsible for the equipment's design and manufacture. After years of litigation, culminating in a trial and a verdict for defendant Vulcan, Inc., Brandt, in post-trial motions, charged Vulcan with discovery fraud and also complained that insufficient evidence and erroneous rulings by the District Court warranted either judgment in his favor as a matter of law, or a new trial. The District Court disagreed and denied Brandt's motions. This appeal followed.

## I. Factual Background

Sometime in the 1960's, Granite City Steel contracted with Koppers, Inc. for the building and installation of a basic oxygen furnace ("BOF"). Koppers, in turn, subcontracted with Titzel Engineering, Inc. ("Titzel") for a portable scaffold that would allow bricklayers to move up and down the brick-lined BOF. Installed in 1967 or 1968, the scaffold became known as the "Titzel Tower" or "Titzel elevator."

In 1970, Titzel merged into Vulcan, Inc. and operated as Vulcan Engineering, a division of Vulcan, Inc., until 1983. That year, Vulcan, Inc. sold Vulcan Engineering and all of its assets to UMEC Corporation. By agreement, UMEC assumed virtually all of Vulcan Engineering's liabilities.

On June 23, 1982, Brandt, a longtime bricklayer for Granite City Steel, was working on the Titzel Tower relining the BOF with 70–pound bricks. A section of grating, generally held in place by tabs that inserted into adjoining grates, apparently broke while Brandt was standing on it, causing him to fall. The actual grating was not saved and, consequently, never examined.[1]

Following the accident in 1982, Brandt sued Titzel and Vulcan, Inc. in state court. After being dismissed for want of prosecution, Brandt refiled in 1988 and Vulcan removed the case to the District Court for the Southern District of Illinois. Early on, Brandt served a number of interrogatories upon Vulcan asking the company to divulge what it knew about the design and manufac-

Bob L. Perica, Hoeffert & Perica, Alton, IL (argued), for plaintiff-appellant.

Michael J. Nester, Charles L. Joley (argued), Donovan, Rose, Nester & Szewczyk, Belleville, IL, for defendant-appellee.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and ASPEN, District Judge.*

ASPEN, District Judge.

Having fallen off of a portable scaffold known as a "Titzel Tower," Harry Brandt filed suit against the companies he believed

---

\* The Honorable Marvin E. Aspen, District Judge of the Northern District of Illinois, sitting by designation.

1. It is not clear whether the faulty grating was an original, a repaired, or a replacement piece.

ture of the Titzel Tower. Vulcan indicated that it did not know when the Titzel Tower was designed or manufactured and declared that "[t]he brick elevator was supplied by unknown persons or entities. It was not supplied by Vulcan, Inc." R. 161 at ¶¶ 2, 3, and 21. Similarly, in response to Brandt's request for production of documents, Vulcan stated that it was "unable to provide any of the items requested . . . for want of sufficient information as to the brick elevator and scaffold Plaintiff was on at the time of his alleged injury in 1982, and consequent lack of knowledge of this Defendant as to what to search for, as to whether any such records, in fact, ever existed and/or ever had reason to be in this Defendant's possession." Notice of Compliance, R. 86 at Exh. A. However, Vulcan did indicate the following:

> Titzel was merged in 1970 into Vulcan, Inc. The business relationship was that after 1970 Titzel was being operated as Vulcan Engineering, Division of Vulcan, Inc., until that division and its assets were sold in 1983 to UMEC Corporation, a Pennsylvania Corporation, with an assumption by UMEC of all liabilities, if any, outstanding.

R. 161 at ¶ 7. In the face of these responses, Brandt neither sued nor directed discovery toward UMEC, nor did he ever seek to depose any Vulcan officers or employees.[2]

On March 19, 1990, Brandt filed a motion to compel, stating that "Plaintiff believes that the Defendant has the information requested in said discovery material." R. 46 at ¶ 4. The District Court informed Brandt that his motion was improperly vague and directed him to supply the court with a list of the items sought. Although Vulcan responded to the motion, detailing the corporate transformations of Titzel and denying any further information regarding the scaffold, there is no record that Brandt ever remedied his deficient motion. On April 16, 1990, the District Court denied Brandt's motion to compel.

In 1991, after the parties completed further discovery, Vulcan moved for summary judgment, arguing that Brandt's suit was barred by statute of limitations. Vulcan relied on an Illinois statute providing that tort or contract actions based on negligent design, planning, supervision, and/or construction of an improvement to real property must be brought within ten years. In arguing that Brandt's claim fell within the purview of the statute, Vulcan asserted:

> Plaintiff has also failed to provide any supporting evidence that 'defendant's participation in the case was limited to simply manufacturing the portable scaffold that was later used on the property of Granite City Steel.' The 'Titzel Tower' was not simply manufactured by Titzel and later 'used on the property of Granite City Steel' but was *designed* by Titzel Engineering, at the request of Kopper's Company, Inc. to meet particular specifications. The 'Titzel Tower' was designed by Titzel Engineering for use exclusively in the BOF at Granite City Steel. (Please see Koppers Company, Inc. purchase order previously attached to Defendant, Vulcan, Inc.'s Motion for Summary Judgment.)[3]

R. 84 at 4.

Brandt charged that Vulcan's newest assertions contradicted its prior sworn discovery responses. As proof, Brandt attached a copy of the Notice of Compliance in which Vulcan swore it could not provide requested documents and lacked the information with which to obtain relevant records. Vulcan defended its actions by claiming that, in its summary judgment motion, it was relying on deposition testimony and documents turned up during discovery. Although Brandt did not file a motion to compel or seek sanctions in response to Vulcan's brief, it submitted requests for updated discovery responses. Vulcan denied having any additional information.

In 1993, the case went to trial. Several events of note occurred during the trial. First, Brandt highlights several developments that allegedly confirm Vulcan's discovery fraud. While cross-examining Vulcan's expert witness, Brandt's attorney discovered that, by way of preparation, Vulcan had pro-

---

2. Vulcan, however, joined UMEC as a third party defendant and ultimately obtained summary judgment against it.

3. The District Court denied Vulcan's summary judgment motion.

vided its expert with a copy of the original contract regarding the Granite City Steel plant ("contract 2275"). Contract 2275, in turn, contained the Titzel Tower specifications, including the exact dimensions of the allegedly inadequate tabs, and had not been produced by Vulcan during discovery. Next, Brandt's counsel travelled to Madison County, Illinois to examine discovery material disclosed by defendants Titzel, Vulcan Engineering, and Vulcan, Inc. in a separate case. Among other things, Vulcan Engineering and Titzel (but apparently not Vulcan, Inc.), represented by the Rose, Nester, Donovan & Szewczyk law firm,[4] had produced an Inquiry Record kept by Vulcan, Inc. during its ownership of Titzel to track all complaints received about its equipment. The record revealed that a company, Weirton Steel, had lodged a complaint about the Titzel Tower in 1978.

According to Brandt, the trial also included several erroneous rulings. Specifically, the District Court prohibited Brandt from presenting evidence of modifications Granite City Steel made to the Titzel Tower subsequent to the accident. Furthermore, the court used a modified form of Illinois Pattern Instruction 12.05, rather than 12.04, concerning proximate cause. The instruction given reads:

> If you decide that the sole proximate cause of the injury to the plaintiff was something other than the conduct of the defendant, then your verdict should be for the defendant.

Finally, having previously granted Brandt's motion in limine precluding the mention of pension benefits, the District Court permitted Vulcan to cross-examine on the issue of his retirement benefits once Brandt testified on direct that he retired on disability.

Before the case was submitted to the jury, Brandt moved for judgment as a matter of law, arguing that Vulcan's alleged discovery fraud deprived him of a fair trial and that there was no legally sufficient basis from which a jury could find for Vulcan. The District Court denied the motion. After the jury found for Vulcan, Brandt renewed its motion for judgment as a matter of law and sought a new trial based on (1) the purported discovery fraud and (2) the court's assertedly erroneous rulings. The District Court again denied Brandt's motions. This appeal followed.

## II.  Discussion

### A.  Rule 37 Sanctions

Invoking Federal Rule of Civil Procedure 37, Brandt asked the District Court (first at the jury instruction conference and then again after the verdict) to sanction Vulcan's alleged discovery fraud by striking Vulcan's answer and awarding Brandt judgment as a matter of law.[5] Federal Rule 37(b)(2) provides:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just....

Fed.R.Civ.P. 37(b)(2). At the outset, we observe that the District Court made no finding one way or the other as to whether Vulcan actually perpetrated discovery fraud. Instead, the court concluded that Rule 37(b)(2) did not apply because (1) Vulcan did not violate any discovery *orders*, and (2) Brandt's motion was untimely. As a result, unless the District Court erred in its interpretation of the scope of Rule 37 or abused its discretion in finding Brandt's motion untimely, we need not reach the question of whether Vulcan actually committed the alleged discovery fraud.[6]

---

4.  Rose, Nester, Donovan & Szewczyk currently represent Vulcan, Inc. and indicated to the District Court that they were not concurrently representing Titzel.

5.  Brandt also moved for sanctions under Illinois Supreme Court Rule 219(c)(vi). Not surprisingly, the District Court ruled that relief under that

provision was unavailable in federal court. In any event, the issue is not before us on appeal.

6.  Generally, we review a trial court's denial of sanctions for abuse of discretion. *See, e.g., Philips Medical Sys. Int'l., B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir.1992) ("This Court reviews discovery sanctions for abuse of discretion.").

### 1. Scope of Rule 37(b)(2)

■ We first review de novo the District Court's understanding of Rule 37's scope. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir.1994) (legal conclusions are subject to de novo review). The rule's plain language limits its applicability to situations where a court order has been violated. Moreover, the caselaw reveals that Rule 37(b)(2) has been invoked only against parties who have disobeyed a discovery ruling of some sort.[7] *See, e.g., Philips*, 982 F.2d at 214 ("[Rule 37(b)(2)(C)] sanctions may only be imposed where a party fails to comply with a discovery order and displays wilfulness, bad faith or fault."); *Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir.1992) ("A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal of the suit, a defendant's by entry of a default judgment."). The existence of various alternative avenues of relief for fraudulent conduct, including Rule 11 and Rule 26(g), only buttresses Rule 37's plain meaning.[8]

Rule 37 sanctions, then, are appropriate here if, and only if, Vulcan violated a discovery order. The District Court, however, expressly noted, and the record confirms, that Brandt failed to obtain a court order compelling Vulcan to comply more fully with discovery. Nor has Brandt pointed to any agreement among the parties that might constitute an "order." Accordingly, the District Court properly concluded that Rule 37(b)(2) did not afford Brandt any relief from Vulcan's alleged wrongdoing.

### 2. Timeliness

■ In any event, it is undisputed that Brandt waited until the jury instruction con-

ference before seeking sanctions for Vulcan's alleged discovery fraud. Although Rule 37(b)(2) does not establish any time limits within which a motion for sanctions must be filed, Brandt does not dispute that unreasonable delay may render such a motion untimely. *See, e.g., Butler v. Pettigrew*, 409 F.2d 1205, 1207 (7th Cir.1969) (where a party neglected to seek a motion to compel prior to trial and waited until after judgment to request sanctions, it waived its rights under Rule 37(b) and (d) for judgment as a matter of law based on opposing party's failure to fully answer interrogatories).

■ Brandt defends his delay, arguing that he did not learn of certain discovery abuses until the trial was underway. Specifically, Brandt claims that he first learned Vulcan possessed contract 2275 during his cross-examination of Vulcan's expert. Moreover, he did not learn about the discovery materials produced in the Madison County litigation until during and after the trial. What Brandt does not explain, however, is his failure to take action far earlier in the litigation when he first learned of other possible discovery abuses. The District Court explicitly found that Brandt "clearly possessed information indicating that defendant's discovery responses were incomplete long before trial." Order at 3. Brandt points to no facts contradicting the District Court's finding, and the record itself amply supports the court's conclusion.

As early as 1991, Brandt made the following observation:

> It should be further noted that Defendant's insertion in said Motion to Strike is completely contradictory to prior sworn testimony in this case. In Answers to Interrogatories and Response to Request

---

7. While courts have only applied Rule 37(b)(2) where parties have violated a court order, courts have broadly interpreted what constitutes an "order" for purposes of imposing sanctions. *See, e.g., Metropolitan Life Ins. Co. v. Cammon*, No. 88 C 5549, 1989 WL 153558, at *4 (N.D.Ill. November 7, 1989) (violation of an "order" found where a party failed to deliver documents it promised to turn over by a certain date); *Properties Int'l., Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir.1983) (order found where a court directed a party to provide its opponent "with complete discovery").

8. Federal Rule of Civil Procedure 26(g) parallels Rule 11. Under Rule 26(g), every discovery request or response must be signed by either an attorney or party, and the signature serves as a certification that the response or request is consistent with existing law and is not interposed for any improper purpose. If any certification violates the rule, the court may, on its own or a party's motion, impose appropriate sanctions.

for Production of Documents, Defendant Vulcan, [sic] specifically states that it did not supply said product to Granite City Steel, nor do they know who did supply said product.

R. 86 at 1–2. Despite his obvious suspicion that Vulcan's responses were incomplete or false, Brandt filed no subsequent motions to compel. He simply served Vulcan with requests for updated discovery responses. When these produced no additional information, Brandt let the matter rest. It was reasonable for the District Court to conclude that additional evidence of discovery deceptions uncovered during or after the trial did not alter the fact that Brandt could, and should, have taken action years earlier. Accordingly, the District Court did not abuse its discretion in denying Brandt's motion for Rule 37 sanctions as untimely.[9]

### 3. Rule 11 and/or Rule 26(g) Sanctions

Brandt argues on appeal that Vulcan should be sanctioned under Federal Rules 11 and/or 26(g). However, Brandt's resort to these strictures comes too late. Unless exceptional circumstances direct otherwise, we will not consider arguments on appeal unless they have been presented to the district court for decision. *See, e.g., Old Republic Ins. Co. v. Federal Crop Ins. Corp.*, 947 F.2d 269, 276 (7th Cir.1991) (with narrow excep-

tions, "[i]t is fundamental that on appeal to this court a litigant is restricted to those arguments which already have been raised at the district court level"). Brandt did not seek sanctions under either Rule 11 or Rule 26(g) before the District Court, nor has he pointed to any exceptional circumstances excusing this omission. Accordingly, Brandt has waived his right to raise these arguments on appeal.

### B. Judgment as a Matter of Law

Brandt contends that he is entitled to judgment as a matter of law because, based on the evidence adduced at trial, no reasonable jury could have found for Vulcan. In support, Brandt points to the testimony of (1) several Granite City Steel employees, who stated that the scaffold grating tabs broke on a regular basis, (2) Klint Keeler, Brandt's expert, who testified that the gratings for the Titzel Tower were unreasonably dangerous because they were not fit for their intended purpose, and (3) Donald Rudney, Vulcan's expert, who (according to Brandt) stated that if the grating tabs were breaking off on a regular basis, then they were not fit for their intended purpose.[10] In response, Vulcan observes that Brandt's own expert was unwilling to testify that the grating had been negligently designed.[11] Tr. II at 78–79.

9. We acknowledge that courts have inherent authority to sanction parties for discovery abuses. We further recognize that some of Vulcan's actions, although subject to innocent explanation, are troubling. Nonetheless, the record does not support the conclusion that Judge Stiehl, who lived with the case for five years, abused his discretion by declining to impose sanctions on Vulcan despite Brandt's legal missteps.

10. In fact, Rudney simply stated that "[w]ith the tabs broken off [a grating] wouldn't be [fit for its intended purpose.]" Tr. III at 76. In context, the testimony does not further Brandt's efforts here. Moreover, Rudney testified that, before rendering an opinion on the design of the product, an engineer would want to examine the failed product, test the metal for fatigue, check maintenance records, and learn about any overloads of the metal. Tr. III at 27, 42.

11. In relevant part, Keeler testified as follows:

Q: Let me ask the question again from the deposition. Question, "Just so I am clear, you are prepared to testify that this product was

unreasonably dangerous, but you are not prepared to testify as to any negligent act or omission on the part of Titzel, Vulcan, or Umeco?" Your answer, "I don't know what you mean by negligence. It could be an error. It might not be negligence. Or somebody might not have had knowledge. It might not be negligence. I have a problem with negligence." Do you remember being asked that question and giving that answer?

A: Yes.

Q: Is that still your opinion today?

A: Basically it is how you define design flaw. I say there is a design flaw, design error. The bracket shouldn't have come off. As many cases that I am familiar with in engineers liability, if you are an engineer and caught in that, you are held to be negligent in a Court of law, but I picked that up from a semi narrow liability insurance.

Q: My understanding of your testimony is that you think that the product was dangerous as designed, but you have no opinion as to negligence, is that correct?

A: It is questionable as to negligence, but I am not an attorney.

Under Federal Rule of Civil Procedure 50, judgment as a matter of law " 'should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that [people] in a fair and impartial exercise of their judgment may reach different conclusions.' " *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986) (quoting *McKinley v. Trattles*, 732 F.2d 1320, 1323–24 (7th Cir. 1984)). Here, the evidence presented supplies a sufficient basis for reasonable jurors to disagree about whether the Titzel Tower was negligently designed.

Brandt's own expert could not conclude that the grating had been negligently designed. Tr. II, 78–79. Additionally, Vulcan presented evidence that the scaffold was routinely loaded beyond safety capacity, that the tower received little maintenance, and that the grating metal showed signs of fatigue and abuse—all evidence raising the possibility that use and care of the product, rather than negligent design, might have caused the accident. Tr. I at 102–105; Tr. II at 18 and 35–36. Because reasonable jurors could disagree about whether Brandt established negligent design, the District Court properly denied Brandt's motion for judgment as a matter of law based on insufficiency of the evidence.

## C.  New Trial

Arguing that the fairness of his trial was undermined by Vulcan's discovery fraud and by a series of erroneous rulings, Brandt petitioned the District Court for a new trial pursuant to Federal Rule of Civil Procedure 59. After reviewing Brandt's charges, the District Court denied the motion. On appeal, "we may reverse such a refusal [to grant a Rule 59 motion] only upon a finding that the errors at trial were sufficiently substantial to deny the defendants a fair trial." *Rascon*, 803 F.2d at 273 (citing *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir.1986)). With this standard of review in mind, we address Brandt's complaints in turn.

### 1.  Discovery Fraud

The District Court correctly noted that the failure to disclose information within the scope of proper discovery requests can, in certain circumstances, constitute grounds for a new trial. *See, e.g., Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir.1978). In order to obtain this dramatic relief, the movant must demonstrate both that misconduct occurred and that it prejudiced him. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir.1983) (In general, "[t]he misconduct of counsel or a party justifies a new trial where that misconduct prejudiced the adverse party."); *Hines v. Joy·Mfg. Co.*, 850 F.2d 1146, 1153 (6th Cir.1988) (new trial based on discovery fraud only granted upon a showing of substantial prejudice).

In denying Brandt's motion for a new trial, the District Court—having presided over the five-year litigation—concluded that Brandt had failed to show any prejudice stemming from Vulcan's alleged discovery fraud. Order at 6. The court once again relied on the fact that Brandt had been aware of possible discovery fraud long before trial. As discussed above, Brandt did little with this information, failing to obtain an order compelling discovery compliance, to depose Vulcan employees, or even to seek a continuance in order to further explore unclear factual issues.

Brandt contends that his behavior stems directly from Vulcan's mendacious discovery responses. Had Vulcan not lied, Brandt argues, he would have conducted discovery differently. For example, Brandt claims that had Vulcan fully complied with document requests, he would have learned that other companies, such as Weirton Steel, had complained about the Titzel Tower. Armed with this information, Brandt asserts that he could have deposed Weirton employees and uncovered useful evidence. Additionally, Brandt complains that Vulcan's failure to turn over a copy of contract 2275 prevented him from providing the jury with the grating tabs' actual dimensions.

Brandt's claim of prejudice, however, is belied by the fact that he did virtually nothing to gain the information he now claims was vital to his case. If the exact dimensions of the grating tabs were critical to Brandt's

suit, we are hard pressed to imagine that (1) he could not have obtained a copy of contract 2275 from another source (as Vulcan claims it did), or (2) he could not have gathered information on the tab dimensions from Granite City Steel employees. In the absence of any evidence that Brandt made a serious effort to obtain this "vital" information, his current assertions of prejudice ring hollow.

■ The same holds true for Brandt's lament that he was deprived of the opportunity to depose Weirton employees about their troubles with the Titzel Tower. Nothing prevented Brandt from pursuing this sort of information through UMEC. Moreover, there is no evidence on the record that Vulcan, Inc. possessed the Inquiry Record, which reveals Weirton's complaint, at the relevant time. Instead, the record reveals that this document was produced in 1990 by Vulcan Engineering and Titzel in a separate (and unrelated) action brought against Vulcan, Inc., Vulcan Engineering, Titzel, and other defendants. At that time, however, both Vulcan Engineering and Titzel were distinct entities from Vulcan, Inc. The fact that they turned over these documents, therefore, is not necessarily probative of any wrongdoing on Vulcan's part. In any event, Brandt presents nothing to suggest that Weirton's complaint regarding the Titzel Tower had any bearing on the case at hand. It would have taken Brandt only minimal effort to determine the general parameters of Weirton's complaint and learn whether it pertained to the instant suit.

In sum, we agree with the District Court that Brandt's claims of prejudice are unsupported by the evidence. Even assuming that the information would have been helpful to some degree, we are unpersuaded that Brandt was meaningfully prejudiced.

## 2. Evidence of Subsequent Modifications

■ Brandt argues that the District Court should have permitted him to offer evidence of subsequent modifications made to the gratings in the Titzel Tower. Because Vulcan was not the party who made the alterations, Brandt contends, the public policy that typically requires exclusion of subsequent re-

pairs does not pertain here. That is, unlike a defendant, a third-party will not be discouraged from implementing necessary modifications. *See, e.g., Pau v. Yosemite Park,* 928 F.2d 880, 888 (9th Cir.1991) (subsequent remedial measure should have been admitted where non-defendant took the measure, since admission of this type of evidence will not inhibit third parties from taking such action); *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990) (recognizing same exception to Federal Rule of Evidence 407).

While there is authority for Brandt's position, Vulcan points out that (1) evidentiary rulings are within the sound discretion of the trial court, (2) Brandt failed to make an offer of the proof he hoped to admit and has thus failed to preserve this point for appeal, and (3) it is hard to see what bearing post-accident modifications made in the 1980's could have on design negligence that allegedly took place in 1965.

Federal Rule of Evidence 103(a)(2) provides that "error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected," and "the substance of the evidence was made known to the court by offer or was apparent from the context within which the questions were asked." Here, Brandt failed to respond to the exclusion with an offer of proof, and the substance of the excluded testimony is not readily apparent from the context in which it was raised. Although Brandt now suggests that the redesigned grates had connecting plates twenty times larger than the tabs that were used at the time of the accident, Brandt did not offer evidence at trial as to what materials were used in the redesign, what motivated the alteration, or when it occurred. Without this information, the District Court had no way of evaluating how relevant this evidence would have been to Brandt's case—particularly given the lengthy time gap between the design and the modification. Likewise, we lack sufficient knowledge to conclude that the District Court's ruling on this matter undermined the fundamental fairness of the trial. *See Young v. Rabideau,* 821 F.2d 373, 376 (7th Cir.1987), *cert. denied,* 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987).

### 3. Jury Instructions

■ Brandt claims that the District Court erred by using Illinois Pattern Instruction 12.05, which should only be given if there is evidence that some outside agency was the sole proximate cause of plaintiff's injury. Because there was no such evidence, Brandt contends, I.P.I. 12.05 was inapplicable and its use was prejudicial.

The question before us is whether the evidence presented at trial supported the District Court's decision to give the contested instruction. Specifically, was there evidence that the broken tab resulted from some cause other than negligent design. The District Court concluded, and the record confirms, that the trial produced evidence that significant weight loads were routinely placed on the grating in question. There was evidence that the grating metal showed signs of fatigue and abuse, and several Granite City Steel employees testified that the scaffold received little maintenance. Because the evidence adduced at trial raised the possibility that an outside agency (i.e., Granite City Steel) may have caused the injury, I.P.I. 12.05 accurately reflected the governing law and did not mislead the jury.

### 4. Evidence of Pension Benefits

■ Finally, Brandt argues that Vulcan should not have been allowed to introduce evidence of his pension benefits because (1) such evidence is ordinarily inadmissible, and (2) the information prejudiced the jury by intimating that Brandt was "double dipping." Before Brandt took the stand, the District Court explicitly ruled that if Brandt testified on direct examination that he retired under disability, then Vulcan was entitled to impeach him by asking whether he left with full retirement benefits. This is exactly what happened. After Brandt stated on direct

that he retired under disability, Vulcan elicited the fact that Brandt continued to work for two years after the accident, retiring only after he was eligible for full benefits. Tr. II at 136–37. In its closing, Vulcan then argued that Brandt's claim that he retired due to disability was belied by the fact that he retired with full pension benefits. Tr. IV at 40.

Although evidence of collateral source payments is, indeed, generally inadmissible in Illinois, *see Hamrock v. Henry,* 222 Ill. App.3d 487, 584 N.E.2d 204, 210, 165 Ill.Dec. 25, 31 (1st Dist.1991), once it has been established as relevant, the District Court has broad discretion in determining whether its probative value outweighs possible prejudice. *See In re Air Crash Disaster Near Chicago,* 803 F.2d 304, 308–09 (7th Cir.1986) (relevance of evidence is determined by state law, but admissibility is governed by FRE 403 and the trial court's exercise of its broad discretion will be accorded great deference) (citing *West v. Love,* 776 F.2d 170, 174 (7th Cir.1985)).

■ In *Cowens v. Siemens–Elema AB,* 837 F.2d 817, 824–25 (8th Cir.1988), for example, the Eighth Circuit ruled that evidence of workers' compensation payments was admissible to impeach a plaintiff's statements that he had suffered financial stress after the accident in question. The *Cowens* court also observed that "the admission of the evidence cannot be said to have prejudiced [the plaintiff] because the jury found in favor of the [defendants] on the issue of liability."[12] Here, the trial court did not abuse its discretion by admitting evidence of Brandt's pension benefits, because it was relevant simply to the issue of damages and was used only to impeach his claims that he retired due to disability.[13]

---

**12.** The fact that Brandt's receipt of pension benefits does not bear on any element of liability distinguishes this case from *Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). In *Tipton,* the Supreme Court held that because admission of plaintiff's receipt of Longshoremen's workers' compensation bore on the liability issue of whether plaintiff should properly be considered a seaman under the Jones Act, the erroneous evidentiary ruling could

not be considered harmless merely because the jury found for defendant on liability.

**13.** In any event, even if this ruling constituted error, it would not call into question the fundamental fairness of the trial, and was harmless. *See, e.g., Harris v. Davis,* 874 F.2d 461, 465 (7th Cir.1989) (evidentiary errors "will be deemed to be harmless unless they had a 'substantial and injurious effect or influence on the jury's verdict' ") (quoting *Kotteakos v. United States,* 328

### III. Conclusion

For the reasons set forth above, the order of the District Court is

AFFIRMED.

U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). *See also* Fed.R.Civ.P. 61 (an erroneous ruling does not provide the basis for a new trial unless the error "affect[s] the substantial rights of the party").