# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3490

HAROLD WHITING and LEATRICE WHITING,
individually and as husband and wife, and
KATRINA WHITING,

*Plaintiffs-Appellees,*

*v.*

RICKY L. WESTRAY, RICHARDSON MOVING AND
STORAGE, INC., MIAMI VALLEY MOVING AND STORAGE,
INC., BEKINS VAN LINES COMPANY and
THE BEKINS COMPANY,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:98 CV 585 RL—**Rudy Lozano**, *Judge.*

ARGUED MAY 20, 2002—DECIDED JUNE 28, 2002

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* An appellate record is a bad place to seek a nuanced portrayal of a trial that the losing side thinks was unfair because the attorney for the winners allegedly poisoned the case. For 4 days last May, attorney John W. Patton, Jr. defended this case against Timothy Schafer, the plaintiffs' counsel. The trial transcript discloses that, at scattered times during the proceedings,

Schafer made inappropriate remarks during his opening statement; persisted in making "speaking" objections (commenting on evidence rather than stating a legal ground against its admissibility) despite the trial judge's *in limine* order, and repeated admonitions, barring them; charged, in front of the jury, that videotape evidence offered by the defense was "altered"; interrupted both the judge and Patton; made occasional crass comments in response to Patton's objections and arguments; passed a few (what appear to have been) sarcastic observations on the quality of defense testimony during cross-examination; and included some fairly pointed remarks about Patton in his summation. In sum, Schafer appears to have exasperated Patton and, to some extent, the district judge (Lozano, J.).

His excitability aside, Schafer also won his case: the jury returned a large verdict in favor of his clients. The defendants brought a motion for a new trial under Federal Rule of Civil Procedure 59, asserting that Schafer's misconduct denied them a fair trial. The district judge denied that motion, finding that although Schafer's actions were not "a model for acceptable courtroom behavior," the defendants had not been prejudiced. The defendants appealed.

We review the denial of a motion for a new trial for an abuse of discretion. *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 606 (7th Cir. 2000). To obtain a new trial on attorney misconduct grounds, the defendants must show both that misconduct occurred and that it prejudiced their case. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994); *see also Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983). We'll assume that Schafer's various shenanigans constituted misconduct and turn to the key question of whether the defendants were prejudiced. Given the district judge's familiarity with the parties, the litigation as a whole, the credibility of the evidence presented during the trial, and the effect of the evidence and any improprieties on the jury—not to mention the slim hope that any

of these factors can be accurately portrayed in an appellate record—our resolution of this question is necessarily deferential. *See Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997) ("We defer to the district court because of its unique position to view the evidence and the course of the trial.").

The prejudice inquiry turns the focus away from the lawyers and to the sad facts of this case. Harold Whiting and his daughter Katrina were in their car waiting at a red light. They were severely injured when Ricky Westray rear-ended them in the tractor-trailer he was driving for Richardson Moving and Storage (which had an agency relationship with the other defendants). Westray's vehicle was going approximately 50 mph at the time, and the impact of the crash pushed the Whitings' car 260 feet. Harold, Katrina, and Leatrice Whiting (Harold's wife and Katrina's mother) brought suit against the defendants, who conceded Westray's negligence. The case went to trial only on the issue of damages. We review the evidence, of course, in the light most favorable to the verdict.

Most of the fighting at trial concerned Harold's claim. Harold and Leatrice Whiting both testified to the effect the accident had on their lives. Prior to the accident, Harold was a valued motor inspector at U.S. Steel and an active, productive member of the Whiting household. Now, Harold has childlike communication skills (sometimes stuttering "one, two, three" before articulating a thought), memory problems, loss of sexual function, constant pain, and a severe limp, which causes him to fall over on occasion. He requires the almost constant care and attention of his wife or daughter. Attorney Schafer offered the testimony of six physicians who examined and/or treated Harold at various points since the accident. The doctors testified that Harold suffered permanent brain damage and a spinal cord injury and was totally disabled. Schafer also presented the testimony of an economics professor, who calculated Harold's past and future economic losses at just over $6 million.

Although the defendants tested the Whitings' medical testimony on cross-examination, they did not present any medical testimony of their own, choosing not to put their medical expert on the stand. Nor did the defense present an economic expert to rebut the evidence concerning Harold's economic losses.

Instead the defense opted to show that there were "two Harold Whitings," one who pretended to be severely injured when it advantaged him and one who, when no one was watching, was not as severely injured as he claimed. To substantiate this defense, the defendants offered three witnesses. First, they presented Ivan Buchanan, a Gary, Indiana, police officer who caught Harold driving 70 mph in a 45 mph zone a year and a half after the accident. Harold ostensibly was unable—or at least not supposed—to drive. Buchanan testified that Harold did not seem impaired, although his speech was "a little bit slow." Second, they offered Gary Conner, a self-employed contractor hired by the Whitings to install replacement windows in their home. Conner twice met briefly with Harold, after which he was contacted by a defense investigator. He told the investigator that Harold talked slowly but did not repeat himself. Conner told Harold about this meeting, after which, Conner said, Harold spoke in backward sentences, repeated himself, and stuttered. Last, the defendants put on Christopher Witt, a private investigator, who conducted video surveillance of Harold. His tapes, which showed Harold ambling around in various settings, were played for the jury.

The jury heard all this testimony and awarded $6 million to Harold, $1.22 million to Leatrice (for the loss of services, society, and companionship of Harold), and $80,000 to Katrina.

With that context in mind, we return to the question of whether Schafer's conduct prejudiced the defendants. We note, as did the district judge, that a fair amount of

Schafer's alleged misbehavior occurred during sidebars, outside the earshot of the jury. Moreover, the majority of Schafer's alleged misbehavior occurred right out of the gate; it did not permeate the trial. Judge Lozano himself commended both attorneys on the second day for "being less argumentative." On the fourth day, he noted that things had been "going along . . . smoothly." Last, the defendants are not very precise about their prejudice. With one exception, they do not specify how Schafer impeded the presentation of their case. Schafer's misbehavior did not prevent the jury from hearing any pieces of defense evidence and, aside from the occasional (and, it seems to us, typical) disruption, the defendants were able to cross-examine the Whitings' witnesses.[1]

Now for the one exception. The defendants argue that Schafer tainted Witt's videotapes by suggesting that they had been "altered." The episode went like this:

| | |
|---|---|
| Mr. Patton: | Okay. Your Honor, at this time I would move to have [the videotapes] admitted into evidence. |
| The Court: | Any objection? |
| Mr. Schafer: | We're just concerned, Your Honor that— |
| The Court: | Counsel, state the objections, not your concerns. |
| Mr. Schafer: | I object. We have reason to believe that the tapes were not ongoing and were altered. |

---

[1] Turnabout is fair play. It should be noted that, as in any lawsuit, both attorneys at times, deliberately or not, hindered the presentation of evidence. The district judge admonished Patton a number of times not to interrupt witnesses in mid-answer, and his warnings to counsel were often addressed to both Patton and Schafer. Judge Lozano seems to have experienced some level of frustration with both lawyers.

The Court:    Counsel, approach.

              (Bench Conference.)

              (Outside the hearing of the Jury.)

The Court:    Mr. Schafer, you are coming close to get-
              ting yourself a mistrial. You're making
              an accusation. Are you going to have wit-
              nesses come here and testify to that?

Mr. Schafer:  Judge, the tapes shows [sic]—

The Court:    Are you going to have witnesses come in
              and testify to that?

Mr. Schafer:  No, I'm going to do it through him.

The Court:    Then you can do it during cross-examina-
              tion.

Mr. Schafer:  Right.

The Court:    What the question is right now: Is there
              any objection to—

Mr. Schafer:  Oh, okay.

The Court:    —having them admitted?

Mr. Schafer:  My only objection is, was he told to turn
              the camera off . . . the camera was turned
              off.

The Court:    You can do that during cross-examina-
              tion.

Mr. Patton:   Just for the record, the comment he made
              to the Court implying the tapes have
              been altered comes to the prejudice—

The Court:    He said we believe.

Mr. Patton:   We, him, all right, it's now in front of the
              Jury. I have asked every single day not to
              have these types of speaking objections.

You have made your orders clear that he is not to do that. If I may finish.

Mr. Schafer: All right.

Mr. Patton: And I have said, I don't want him saying anything that comes to the prejudice of the Defendants and, Your Honor, there is nothing more prejudicial than implying that some misdeed or misconduct has been done by the Defendants—

. . . [T]he bell has been rung. And I'm moving . . . for a mistrial, based on that statement, just to protect the record.

The Court: Counsel, I will take it under advisement.

Although Schafer should have raised this problem in a sidebar, we don't think his statement prejudiced the defendants. First, nothing more was ever heard of the defendants' mistrial motion. The judge never ruled on it and defense counsel did not reiterate it until his post-trial motion. Second, the tapes were admitted and shown in full to the jury. Defense counsel had ample opportunity, after Schafer's fleeting remark, to present the evidence. Third, the jurors were instructed that "any statements, questions, objections or arguments made by the lawyers are not evidence in the case" and that "[o]pening statements, closing arguments and other statements of counsel should be disregarded to the extent they are not supported by the evidence." *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999) (noting curative effect of instructions, which juries are presumed to follow). Last, defense counsel himself addressed the "alteration" accusation in his closing argument. In sum, the defense had a full opportunity to present the videotapes to the jury and to persuade it to give them due weight, independent of Schafer's "alteration" charge.

That leaves a final argument. The defendants claim that the excessiveness of the jury's award itself proves prej-

udice.[2] That argument faces a couple of problems. First, the Whitings presented considerable evidence, in the form of the Whitings themselves and, as we have said, six different physicians who said Harold suffered brain damage and a spinal cord injury. The defense offered no medical testimony of its own. The jury likely believed that Harold was severely injured. There is plenty of evidence to support that determination and the resulting award. Second, and more specifically, the Whitings presented unrebutted, expert testimony that Harold sustained just over $6 million in economic losses. It is hard to see how a $6 million verdict could be termed excessive with this evidence in the record.

Third, the jury had a front row seat for Schafer's antics, no matter how they are viewed. And if they were as bad as the defense claims, it seems odd for us to assume, in the face of the judge's and Patton's frustration with Schafer, that the jurors were enamored of him. Typically, misbehavior and admonition by a judge reflect badly on a trial lawyer. Plus, one could say that the award itself even provides a colorable argument (but it's only "colorable," for attorneys often ask for the stars while only hoping for the moon) that Schafer may have prejudiced his own case. Schafer requested approximately $20 million for Harold; the jury gave him $14 million less than that. Schafer requested approximately $250,000 for Katrina; the jury awarded about a third of that. These awards were closer to the defendants' recommendations than to Schafer's. (The defense recommended that the jury award $700,000 to Harold and $36,800 to Katrina.) Also, the fact that the jury chose $6 million as the magic number for Harold seems particularly significant. Although breaking down jury awards is

---

[2]   We do not understand the defendants to be seeking a remitturer because the verdict was excessive. They cite the excessiveness of the verdict to show the prejudice that Schafer's misconduct caused.

a bit like reading tea leaves, the total award to Harold was almost exactly the amount his expert set as his economic damages. Assuming the jury trusted the expert's calculations, it seems at least possible that the jury gave Harold nothing for pain and suffering, disfigurement, mental anguish, and other non-economic losses. This possibility is just a guess, but one that seems at least as likely as the defendants' scenario, and thereby illustrates the difficulty of basing prejudice on the size of a jury verdict alone.

In sum, the defendants cannot show that Schafer's antics prejudiced their case and denied them a fair trial.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*